IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ronald C. Albright, | ) | Case No. 4:25-cv-02826-JDA |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Warden Evans Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Petitioner's Petition filed pursuant to 28 U.S.C. § 2254 (the "Petition"); a Report and Recommendation ("Report") of the Magistrate Judge; and Petitioner's motions to stay, expand the record, and compel.  [Docs. 1; 4; 32; 36; 37.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings.

**BACKGROUND**

Petitioner is a state prisoner serving a sentence for 1994 convictions for murder and armed robbery.  [*See* Doc. 1-3 at 11]; Horry County Fifteenth Judicial Circuit Public Index, https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx (search by case numbers D610718 and D610721).  Petitioner was on parole in 2017 when his parole was revoked by the South Carolina Department of Probation, Parole, and Pardon Services ("SCDPPPS") in 2017, and he was reincarcerated.  [*See* Doc. 1-3 at 11.]  He received subsequent parole hearings in 2018, 2021, and 2023.  [*See id.*]

On March 13, 2023, Petitioner filed an action in the South Carolina Administrative Law Court (the "ALC") appealing the initial 2017 revocation.  [*See id.* at 12.]

On May 2, 2023, the ALC issued a decision dismissing Petitioner's appeal of the SCDPPPS decision. [*Id.* at 6–13.] Regarding the timeliness of the appeal, the ALC took note of the parties' conflicting factual representations: although SCDPPPS claimed that Petitioner "signed the parole revocation order and received the offender copy on August 30, 2017," Petitioner claimed that "he never received a final written order of revocation." [*Id.* at 11.] Assuming Petitioner received the final order of revocation on August 30, 2017, the ALC determined that Petitioner's appeal did not comply with Rule 59 of the South Carolina ALC Rules, which provides that "[t]he notice of appeal from the final decision to be heard by the [ALC] shall be filed . . . *within thirty (30) days of receipt* of the decision from which the appeal is taken." [*Id.* at 6 (second alteration in original) (internal quotation marks omitted) (emphasis added).] Assuming Petitioner never received the final order of revocation and "the time to appeal the 2017 revocation of parole may not have begun to run," the ALJ determined that, absent a final order, no appeal could commence in any case. [*Id.* at 6–7 (citing SCALC Rule 59).] Under either basis, the ALC found dismissal of the appeal appropriate. [*Id.* at 7 ("The Court need not resolve the conflict between the positions taken by [SCDPPPS] and [Petitioner] regarding issuance and receipt of the final written order of revocation because, under either scenario, dismissal would be appropriate.").] Regarding the court's jurisdiction to hear the appeal, the ALC "agree[d] with [SCDPPPS] that, even if the 2017 parole revocation had been properly appealed to the [ALC], it would lack jurisdiction to entertain any *substantive* review of the revocation order." [*Id.* at 8 (emphasis added).] That said, the ALC acknowledged that it would have jurisdiction to "review the method and procedure employed by the Parole Board in reaching its decision." [*Id.* n.1 (internal quotation marks omitted).]

2

On May 22, 2023, Petitioner filed a notice of appeal of the ALC decision. *See* South Carolina Appellate Case Management System, https://ctrack.sccourts.org/public/caseSearch.do (search by case number 2023-000847 and un-check "Exclude Closed Cases"). On July 3, 2023, the South Carolina Court of Appeals issued an order denying Petitioner's motions for equitable tolling, to proceed in forma pauperis, for production of transcripts, to compel issuance of a final order of revocation, and to appoint counsel. *Id*. In addition, the court directed Petitioner to file an amended designation of matter. *Id.* On July 31, 2023, the South Carolina Court of Appeals issued an order denying Petitioner's motion for reconsideration of the July 3, 2023, order and dismissing Petitioner's appeal for failure to pay the $250 filing fee for the notice of appeal. *Id.*

On September 8, 2023, Petitioner appealed the decision of the South Carolina Court of Appeals to the Supreme Court of South Carolina. *See* South Carolina Appellate Case Management System, https://ctrack.sccourts.org/public/caseSearch.do (search by case number 2023-001408 and un-check "Exclude Closed Cases"). The supreme court denied certiorari on April 16, 2024.[1] *Id.*; [*see also* Doc. 1-1 at 5].

On December 5, 2023, Petitioner filed an application for post-conviction relief ("PCR") in the Horry County Court of Common Pleas. *See* Horry County Fifteenth Judicial Circuit Public Index, https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx (search by case number 2023CP2607425). That action remains pending.

---

[1] In a separate case, the Supreme Court of South Carolina declined to consider Petitioner's petition for original jurisdiction and a writ of mandamus, an addendum to the petition, a correction to the petition, two motions for summary judgment, and a second petition for original jurisdiction and a writ of mandamus under Rule 245 of the South Carolina Appellate Court Rules. [Doc. 1-1 at 6.]

Petitioner claims he finally received a written order of the 2017 revocation on April 10, 2024.  [Docs. 1-1 at 9; 34-1 at 3.]

Petitioner filed this Petition on April 2, 2025.[2]  [Doc. 1.]  Petitioner alleges he is being held in violation of the Constitution, laws, or treaties of the United States on the following grounds: violations of the Due Process Clause, the Confrontation Clause, and the Double Jeopardy Clause; violations of the Interstate Compact for Adult Offender Supervision ("ICAOS"); and false arrest associated with his 2017 parole revocation.  [*Id.* at 5–9.]  He seeks reinstatement of his supervision.  [*Id.* at 14.]

On July 3, 2025, the Magistrate Judge issued a Report recommending that the Petition be dismissed with prejudice and without requiring Respondent to file a return. [Doc. 32.]  In particular, the Magistrate Judge determined that the Petition was untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA")'s one-year statute of limitations, because "the factual predicate of Petitioner's revocation could have been known to him at his revocation and re-incarceration, regardless of receipt of the 'final written order' of revocation."  [Doc. 32 at 3];  28 U.S.C. § 2244(d)(1)(D).  Further, the Magistrate Judge determined that Petitioner did not present sufficient allegations warranting equitable tolling of the limitation period.  [*Id.* at 5–6.]  The Magistrate Judge advised Petitioner of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so.  [*Id.* at 7.]

The Clerk docketed Petitioner's objections to the Report on July 21, 2025.

---

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack,* 487 U.S. 266, 270 (1988). Accordingly, this Petition was filed on April 2, 2025.  [Doc. 1-2 at 1 (envelope marked as received by the prison mail room on April 2, 2025).]

[Doc. 34.]   Principally, Petitioner contends he timely submitted his Petition under 28 U.S.C. § 2244(d)(1)(A), (d)(1)(B), and (d)(2)—or the statute of limitations was otherwise equitably tolled—because "Respondent SCDPPPS unlawfully withheld or unreasonably delayed issuance and delivery of the written final order of revocation, essentially barring a proper appeal."  [*Id.* at 1, 3.]   Further, Petitioner claims that this Court may review any procedurally defaulted claims because he "is actually innocent of the claims that the revocation being challenged is based upon."  [*Id.* at 4.]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.   The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions.  *See* 28 U.S.C. § 636(b).  The Court will review the Report only for clear error in the absence of an objection.  *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (internal quotation marks omitted)).

5

## ANALYSIS

The Court has conducted a de novo review of the Report, the record, and the applicable law.  Upon such review, the Court accepts the Report of the Magistrate Judge.

As an initial matter, the Magistrate Judge did not err in applying subparagraph (D) of 28 U.S.C. § 2244(d)(1).  Section 2244(d) provides:

> **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the *latest of*—
>
> > **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > **(D)** *the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.*
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

(emphasis added).

Petitioner appears to argue that the one-year statute of limitations for his federal petition began to run under § 2244(d)(1)(A) on April 16, 2024, the date on which the South

6

Carolina Supreme Court reached a final determination of Petitioner's direct appeal of the SCDPPPS parole revocation.  [Doc. 34 at 1; *see* Docs. 1-1 at 6; 1-3 at 15.]  The Court disagrees.

The word "judgment," as it appears in § 2244(d)(1)(A), "plainly references 'the judgment' referred to in the preceding subpart (1)—that is, the *state court* judgment pursuant to which the petitioner is in custody."  *Wade v. Robinson*, 327 F.3d 328, 332 (4th Cir. 2003) (emphasis added).  Because SCDPPPS is an executive agency, the challenged parole revocation does not constitute a "state court judgment" triggering § 2244(d)(1)(A).  *Id*.  Instead, the limitation period under subparagraph (A) would have run from the date Petitioner's underlying conviction became final, or the expiration of the time for seeking such review.[3]  *Id.* at 333.  Petitioner filed his Petition more than 31 years after his conviction.  As such, the Petition appears time-barred under subparagraph (A).[4]

Alternatively, Petitioner contends SCDPPPS's withholding of the final written order of revocation constituted an impediment to filing a proper federal petition within the meaning of § 2244(d)(1)(B).  In essence, Petitioner claims he did not file a federal petition prior to receiving the final written order of revocation because he could not possibly exhaust his administrative and state remedies.  [*See* Doc. 34 at 1 ("The Magistrate [Judge]'s premise . . . that Petitioner's revocation could have been known to him at his

---

[3] Petitioner "still is, and remains, in custody pursuant to his 1994 conviction and sentence," regardless of his release on parole and subsequent revocation.  *Wade*, 327 F.3d at 331.

[4] In a brief footnote, the Fourth Circuit suggested that an appeal of a parole revocation in the state courts may "arguably" result in a state court judgment within the meaning of § 2244(d)(1).  *Wade*, 327 F.3d at 333 n.5.  However, the footnote in question constitutes non-binding dicta.

revocation and re-incarceration is obvious, but the added phrase 'regardless of receipt of the written final order of revocation' presumes that Petitioner could exhaust his administrative and state remedies, as mandated by the AEDPA, without issuance or receipt of the final order being contested.  By court rules, this is impossible.").]  To this end, Petitioner argues that the one-year statute of limitations for his federal petition began to run under § 2244(d)(1)(B) on April 10, 2024, the date on which "Petitioner finally received the written final order of revocation from parole examiner P. Garlock."  [Doc. 34-1 at 3.]  Again, the Court disagrees.

Petitioner appears to misunderstand the meaning of "impediment" as it appears in the statute.  As the Fourth Circuit has explained, the perceived futility of an effort is not a true impediment.  *See Minter v. Beck*, 230 F.3d 663, 666 (4th Cir. 2000) ("[W]hile an effort by [the petitioner] to obtain habeas relief prior to [the issuance a Fourth Circuit decision making the petitioner's claim viable] may have been incapable of producing a successful result, the effort itself was still possible. In short, [prior unfavorable case law] was never an impediment to [the petitioner] filing a timely § 2254 petition. Rather, at most, the case law may have meant that his effort in obtaining habeas relief in state court would have been futile. Such futility, however, is not a valid justification for filing an untimely § 2254 petition.").  In the present case, Petitioner could have filed a timely § 2254 petition, even if he perceived the effort to be futile.  Upon such filing, Petitioner could have requested a waiver of his exhaustion requirements or a stay of the case pending proper exhaustion.   Additionally, Petitioner could have filed a timely postconviction petition in state court, tolling the federal statute of limitations under § 2244(d)(2).  Petitioner took no such action.  As such, § 2244(d)(1)(B) does not apply,

as Petitioner has failed to show the existence of an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States."

As the Magistrate Judge concluded, subparagraph (D) of § 2244(d)(1) applies. [Doc. 32 at 3.] Under subparagraph (D), the one-year statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Because Petitioner's claims relate to the process and procedures underlying his parole revocation [*see* Docs. 1; 1-1], Petitioner could have discovered the alleged constitutional and ICAOS violations at issue even in the absence of a final written order of revocation. To this end, a parole violation warrant dated July 12, 2017, appears on the docket sheet of Petitioner's underlying criminal cases, *see* Horry County Fifteenth Judicial Circuit Public Index, https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx (search by case numbers D610718 and D610721), and the South Carolina Inmate Search Detail Report confirms that Petitioner was re-incarcerated on August 30, 2017, as a parole violator, *see* South Carolina Department of Corrections Incarcerated Inmate Search, https://public.doc.state.sc.us/scdc-public/ (search by first name Ronald, last name Albright). Consequently, Petitioner could have discovered the factual predicate of his claims, at the latest, on the date of his re-incarceration, making his federal petition due by August 30, 2018. *See Wade*, 327 F.3d at 333 (determining that petitioner's limitation period under § 2244(d)(1)(D) began to run on the "date [the petitioner] *could have discovered through public sources*" that his parole revocation had become final and that his good conduct time credits had been rescinded (emphasis added)). Thus, under § 2244(d)(1)(D), Petitioner's Petition is untimely.

Petitioner's pending state PCR application did not toll the limitation period under § 2244(d)(2).  As previously stated, the one-year statute of limitations began running in 2017 and expired in 2018.  Accordingly, Petitioner's PCR application, filed on December 5, 2023, did not toll the limitation period.  *See* Horry County Fifteenth Judicial Circuit Public Index, https://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx (search by case number 2023CP2607425).  Moreover, the undersigned has located no other circumstances that would equitably toll the limitation period.  *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

Finally, Petitioner claims that this Court may review any procedurally defaulted claims because he "is actually innocent of the claims that the revocation being challenged is based upon."  [Doc. 34 at 4.]  The miscarriage of justice exception is reserved for petitioners who are "actually innocent," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and Petitioner must show that "*new facts* raise[] sufficient doubt about [Petitioner's] guilt to undermine confidence in the result," *id.* at 327 (emphasis added).  Petitioner has made no such showing; he merely asserts his innocence in conclusory fashion.  [*See* Doc. 34 at 4.]

## CONCLUSION

The Court accepts the Report and Recommendation of the Magistrate Judge. Accordingly, this action is DISMISSED with prejudice and without requiring Respondent to file an answer or return.  Moreover, Petitioner's pending motions [Docs. 4; 36; 37] are FOUND AS MOOT.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

February 2, 2026
Florence, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A petitioner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Slack v. McDaniel*, 529 U.S. 473 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).

In this case, the Court concludes that the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is denied.